UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-21716-CIV-O'SULLIVAN

MARIANA PONTON,

      Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security Administration,

      Defendant.

_____/

## ORDER

THIS MATTER is before the Court on the Plaintiff's Motion for Summary

Judgment with Supporting Memorandum of Law (DE#18, 10/22/2014) and the

Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and

Response to Plaintiff's Motion for Summary Judgment (DE#21, 12/19/2014). The

plaintiff seeks remand and reversal of the decision of the Secretary of Social Security

denying the plaintiff's eligibility for Period of Disability and Disability Insurance Benefits.

In the alternative, the plaintiff requests a remand for further administrative proceedings.

The complaint was filed pursuant to the Social Security Act, 42 U.S.C. §405(g)

(hereinafter "Act"). This case is properly before the Court for judicial review of a final

decision of the Social Security Administration (hereinafter "SSA"). The parties

consented to Magistrate Judge jurisdiction and this matter was referred to the

undersigned pursuant to Judge Moreno's Order dated August 15, 2014 (DE #13,

8/15/14). Having carefully considered the filings and applicable law, the undersigned

enters the following Order.

## PROCEDURAL HISTORY

On July 3, 2011, the plaintiff protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. (Tr. 88). The plaintiff alleged that she had been disabled since June 1, 2007. (Tr. 89). The plaintiff subsequently amended the onset date to reflect May 2, 2011, as the new onset date. (Tr. 173). The plaintiff's applications were denied initially and upon reconsideration. (Tr. 99, 112).

The ALJ found on May 22, 2013, that the plaintiff was not disabled within the meaning of the Act. (Tr. 21-37). The plaintiff submitted a Request for Review of Hearing/ Decision Order on June 7, 2013. (Tr. 16-17). On August 1, 2013, the Appeals Council (AC) provided the plaintiff with 25 days to send additional evidence for consideration. (Tr. 7). The plaintiff provided an additional brief and "Quick Note" treatment record from Richard Chang, M.D. (Tr. 4). The AC denied the plaintiff's request for review on April 24, 2014. (Tr. 1-6). The Order of the AC considered the additionally submitted evidence and made it part of the record. ( Tr. 1-5). The ALJ's decision stands as the Commissioner's final decision. Judicial review of the Commissioner's final decision is permitted by Section 205(g) of Title II of the Social Security Act, 42 U.S.C. § 405(g).

## FACTS

The plaintiff was born on January 19, 1965. (Tr. 49-50, 174). The plaintiff has three years of college education but does not have a bachelor's degree. (Tr. 50). The

plaintiff previously worked as a bookkeeper.  (Tr. 50-54). The plaintiff alleges that she suffers from lupus, fibromyalgia, severe depression, lumbar hernias, back injury and thyroid nodules.[1] (Tr. 217). The plaintiff testified that she stopped working in January of 2013. (Tr. 51). She continued working after both the initial and amended onset dates. (Tr. 50-54). According to the ALJ's decision, the plaintiff's total income was not reflected in her earnings report, so it could not be determined whether the work done after the amended onset date of May 2, 2011, was performed at the substantial gainful activity (SGA) level. (Tr. 23).

Between 2007 and 2013, the plaintiff was observed or treated by multiple physicians regarding her lupus and depression. (Tr. 461, 477, 447-49, 496-97).  The plaintiff was eventually also treated for her later diagnosed fibromyalgia.  (Tr. 498).  In November 2007, the plaintiff's physician was Rafael F. Rivas-Chacon, M.D.. Dr. Rivas-Chacon gave an impression of cutaneous lupus, polyarthralgias and depression. (Tr 400).[2] Thereafter, Dr. Rivas-Chacon sent the plaintiff to Dr. Rene Gomez to evaluate the plaintiff because of her depression. (Tr. 331).

### I. Plaintiff's Treating Physicians

The plaintiff treated with three doctors during and after the alleged onset date of disability: her primary care physician, Dr. Rene Gomez. (Tr. 56); Dr. Chang, a

_____

[1]Tr. 217 is part of the Disability Report (Tr. 216-225), which contains the list of physical and mental conditions that limit the Plaintiff's ability to work. Number "1" of the response, containing multiple limitations, claimed "severe depression," but Number "5" only listed "Depression."

[2] Dr. Rivas-Chacon's letterhead indicates that he was the director of the Division of Rheumatology at Miami Children's Hospital at the time of treating the plaintiff. (Tr. 399).

board certified Rheumatologist from May 2011 until December 2012 (Tr. 56, 496-97); and a psychiatrist, Dr. Delgadillo starting in December 2011.  (Tr. 56, 461).

Prior to the amended May 2, 2011, onset date, the plaintiff was examined by Jamie A. Pachon, M.D. at the request of Dr. Gomez. (Tr. 372-73). In Dr. Pachon's letter to Dr. Gomez, he stated the plaintiff's past medical history included a multitude of symptoms and also stated the plaintiff "carrie[d] a diagnosis of discoid lupus erthematosus." (Tr. 372). On February 16, 2010, Dr. Pachon's progress note indicated that the plaintiff had a tender point and "muscular back pain." (Tr. 370). At the plaintiff's next visit, Dr. Sheldon, another physician at Dr. Pachon's office, indicated that the plaintiff had multiple tender points and assessed that the plaintiff had suspect fibromyalgia symptoms on a progress report dated April 12, 2011. (Tr. 369).

Between May 2011 and December 2012, the plaintiff was treated by Dr. Richard Chang, M.D., a board certified Rheumatologist. (Tr. 496-97). On May 2, 2011, the plaintiff filled out a patient questionnaire that asked her to list any medical problems or surgeries she had. (Tr. 445) The plaintiff only listed lupus. Id. One clinical note from May 2, 2011, showed multiple "x" marks in all quadrants of the skeletal figure. (Tr. 444). Other notes from February 17, 2012, April 20, 2012, May 31, 2012, and August 13, 2012, also contained some "x" marks in different quadrants of the skeletal figures.  (Tr. 487-90). Apart from the "x" marks, Dr. Chang's clinical notes as presented in the record are for the most part indecipherable. (Tr. 441-44, 484-92). Only part of the progress note dated August 8, 2011, is legible, indicating the plaintiff had depression, increased pain, and Dr. Chang planned to increase the plaintiff's cymbalta dosage. (Tr. 442). In a letter dated December 13, 2012, Dr. Chang stated that Ms. Ponton had been

"diagnosed with Fibromyalgia and Depression." (Tr. 483). The plaintiff's symptoms included "rash, fatigue, alopecia, photosensitivity, dry eyes and dry mouth."Id.[3]

Dr. Chang also ordered tests to be performed on the plaintiff. (Tr. 447-49). On May 18, 2011, the plaintiff had a Lumbar Spine MRI performed and a Chest 2-Views x-ray. Id.  The plaintiff's MRI impression revealed foraminal narrowing at L2-L3 and L3-L4 on the right side and an annular tear at L4-L5. (Tr. 448). The chest x-ray impression was negative for acute cardiopulmonary disease. (Tr. 449).

The plaintiff saw a psychiatrist, Noel Delgadillo, M.D., between December 9, 2011, and March 20, 2013. (Tr. 461).[4]  The plaintiff had a total of six (6) visits. (Tr. 477). Dr. Delgadillo diagnosed the plaintiff with "Major Depressive Disorder, Recurrent, Severe w/o Psychotic Features" and "Cyclothymic Disorder."(Tr. 462, 464).  On April 2, 2013, Dr. Delgadillo completed a Mental Capacities Evaluation of the plaintiff. (Tr. 471-81). Dr. Delgadillo's prognosis of the plaintiff was poor[5] and he commented "her medical illness has advanced to the point that she is unable to compete on a regular job." (Tr. 476-77).

---

[3] It is unclear from Dr. Chang's letter as to whether the symptoms refer specifically to lupus, fibromyalgia, or both.

[4] Dr. Delgadillo indicated on the Mental Capacities Evaluation question regarding medical specialty, that he is a Board Certified Psychiatrist and "Fellow, American Psychiatric Association" (Tr. 476).

[5]A "poor" rating on the Mental Capacities Evaluation is defined as follows: "POOR: Cannot Meet Competitive Standards ( precluded at least 25% of an 8-hour workday): An impairment that precludes patient from satisfactorily performing this activity independently, appropriately, effectively, and on a sustained basis in a regular work setting for at least 25% of an 8-hour workday." (Tr. 471).

## II. Sworn Testimony by Rheumatologist-Dr. Chang

### A. April 10, 2013, Oral Sworn Statement

On April 10, 2013, Dr. Chang gave an oral sworn statement, taken before Marcela Losh, a Certified Court Reporter and Notary Public in and for the State of Florida, regarding his treatment of the plaintiff. (Tr. 494-503). Dr. Chang indicated during the oral sworn statement that he is a board certified rheumatologist. (Tr. 496). Dr. Chang stated that his diagnosis of the plaintiff is that: "[s]he has lupus, fibromyalgia, depression and lumbar spine disc herniation and sciatica." (Tr. 497). Dr. Chang's diagnosis of the plaintiff's lupus was based on a skin biopsy and the fibromyalgia was based on a clinical diagnosis of the patient exhibiting at least 11 of the 18 tender points on her body. (Tr. 497-98).

When asked about the plaintiff's symptoms, by Lyle Lieberman, Esq., during the oral sworn statement, Dr. Chang responded that her lupus symptoms included "skin rash, fatigue, hair loss, skin rash under the sun...dry eyes and mouth, sores in the mouth, a history of miscarriage." (Tr. 498). Dr. Chang stated that the plaintiff's symptoms of fibromyalgia symptoms included "fatigue, poor sleep and significant widespread body pain." Id. Dr. Chang affirmed that lupus or fibromyalgia could cause the symptoms described. (Tr. 499). Dr. Chang also explained the plaintiff had other symptoms, including, "pain in her lower back radiating down her right leg," due to a "herniated disk in her lower back and right sciatica." Id.

Dr. Chang further testified during the oral sworn statement, that the plaintiff's impairments would limit the plaintiff's ability to sit or stand while on the job to "no more

than three to four hours per day." (Tr. 501). When given the meaning of sedentary work under section 404.1567(a) of the Social Security regulations, Dr. Chang opined that the plaintiff would not be able to perform the level of sedentary work for eight hours a day, forty hours a week, on a sustained basis. (Tr. 500-01).

**B. August 18, 2013, "Quick Note"**

On August 18, 2013, Richard Chang, M.D., electronically signed a "Quick Note" regarding the plaintiff. (Tr. 505). In the "Quick Note" Dr. Chang opined that the plaintiff

> does meet the 1990 ACR criteria for fibromyalgia. She had all 18 tender points on her examination on 5/2/11. These tender points are located at the bilateral occiput, bilateral trapezius, bilateral supraspinatus, bilateral cervical, bilateral second rib, bilateral lateral epicondyle, bilateral gluteal, bilateral greater trochanter, bilateral knees. She also meets 2010 ACR criteria for fibromyalgia. Her widespread pain index is 15 and her symptom severity scale score is 12.

(Tr. 505).

The additional evidence supplied by Dr. Chang was received by the AC and made part of the record. (Tr. 5). The additional evidence supplied by Dr. Chang was considered by the AC. (Id.)

### III. Consultative Examinations

On September 2, 2011, the plaintiff had a Medical Disability and Social Security Examination. (Tr. 425). Dr. Michael Feldman was the examining physician. (Tr. 427). Dr. Feldman conducted a physical examination of the plaintiff, including an examination of extremities/ musculoskeletal and neurologic exam. (Tr. 425-426). During the plaintiff's physical examination, Dr. Feldman observed that the plaintiff had a rash on

her face with "plaque like formations on the malar areas as well as rash upper extremities." (Tr. 426). Upon extremities/ musculoskeletal examination, Dr. Feldman noted the plaintiff had "[a]ntalgic gait due to low back pain," and "defers stooping due to low back pain and pain is at L5-S1 and coccyx area." Id. Dr. Feldman further noted that the plaintiff's  right wrist range of motion had "dorsiflexion 30 degrees, palmar flexation 40 degrees, ulnar deviation 30 degrees, and radial deviation 10 degrees. The remaining range of motion is within normal limits of the left wrist bilateral hands, hips, knee, feet, and ankles." Id. The plaintiff's cervical spine was within normal limits except for "rotation 60 degrees bilaterally. Lumbar spine forward flexation 75 degrees, extension 10 degrees, and lateral flexation 20 degrees bilateral." Id.

On the neurologic exam, Dr. Feldman explained that the plaintiff's sensory examination was intact and her motor exam was within normal limits except for the abnormal gait. Id. Dr. Feldman examined the plaintiff's right wrist and explained that the plaintiff cannot do "any lifting, pushing or pulling with the right wrist. Id. Dr. Feldman further found "[n]o pathologic reflexes are elicited. No tremor or fasciculation noted. Multiple trigger points anterior and posterior thorax." Id. Dr. Feldman's diagnostic impression was as follows:

    1)    Fibromyalgia per history in addition to low back pain with herniated disc and evidence of radiculopathy as well as history of SLE/lupus. Physical exam and review of systems as discussed and **records from treating physician, rheumatologist Dr. Richard Chang, would be of benefit.**

    2)    Depression, negative history of suicidal ideation without inpatient history. Medication, physical exam, and review of systems as discussed.

3)      Multinodular goiter per history status post biopsy
        and no current thyroid medication. Patient sees
        endocrinologist, Dr. Pita.

(Tr. 427)(emphasis added).

The plaintiff was also referred by the Social Security to Dr. Montes De Oca's office for a general clinical evaluation with mental status for disability evaluation on her claim. (Tr. 432-435). The plaintiff's examination focused on "assessing the nature and extent of her alleged depression." (Tr. 432). The plaintiff's evaluation took place on September 6, 2011. (Tr. 432). The plaintiff was examined by Ailyn Penate, M.S., a Psychometrician/ Psychological Trainee under Gloria Montes de Oca, Ph.D., a Licensed Psychologist. (Tr. 435). The evaluator's diagnosis of the plaintiff was as follows:

| Axis I:   | 296.34                                          | Major Depressive Disorder, Recurrent Severe With Psychotic Features (By History) |
|-----------|-------------------------------------------------|-----------------------------------------------------------------------------------|
| Axis II:  | V71.09                                          | No Diagnosis                                                                      |
| Axis III: | Fibromyalgia, lupus, back pain, lumbar hernias  |                                                                                   |
| Axis IV:  | Financial problems, unemployment, relational problems with daughter |                                                               |
| Axis V:   | Present GAF = 60                                |                                                                                   |

(Tr. 435).  The report concluded that the plaintiff's "prognosis is good...[a] by history diagnosis has been given, as she is currently with psychiatric treatment and no other symptom was observed during the evaluation. The evaluator recommends the

following: Continue psychiatric evaluation." (Tr. 434).

### IV. Expert Testimony of the Medical Expert-Dr. Charles L. Cooke, M.D.

At the ALJ hearing on April 29, 2013, Dr. Charles L. Cooke testified as a Medical Expert on behalf of the Social Security Administration. (Tr. 63-64). Dr. Cooke testified that he thought the record, as it stood on April 29, 2013, was sufficient to render an opinion in the case. (Tr. 64). During his examination, Dr. Cooke testified to the plaintiff's diagnosis of discoid lupus and confirmed the diagnosis. (Tr. 65). Dr. Cooke denied that the plaintiff's discoid lupus fell under a listing. (Tr. 66-67). Dr. Cooke further testified that the plaintiff's possible carpel tunnel syndrome similarly did not meet a listing. (Tr. 67).  With respect to the plaintiff's depression, Dr. Cooke did not think there was sufficient information for him to evaluate because he is not a psychiatrist or a psychologist.  (Tr. 67-68).  Thereafter, Dr. Cooke moved on to discuss the plaintiff's lower back pain. (Tr. 68). Dr. Cooke considered the plaintiff's MRI which revealed herniated disks and an annular tear. (Tr. 68-69). Dr. Cooke stated "these are legitimate and for real causes the pain," but because he did not find radiculopathy, he opined the plaintiff did not meet a listing for spinal stenosis[6] or arachnoiditis[7]. (Tr. 68-70).

Dr. Cooke also testified that he did not consider the plaintiff's psychiatric condition because objective information is slim in that practice area and opined that a

---

[6] According to www.mayoclinic.org, spinal stenosis is "a narrowing of the open spaces within your spine, which can put pressure on your spinal cord and the nerves that travel through the spine."

[7] According to www.webmd.com, arachnoiditis is a pain disorder caused by the inflamation of the arachnoid, one of the membranes that surrounds and protects the nerves of the spinal cord.

"psychiatrist or psychologist would be able to provide more definitive answers." (Tr. 72-73). Dr. Cooke then went on to discuss his disagreements with the treating rheumatologist's (Dr. Chang's) opinion testimony regarding the plaintiff's fibromyalgia. (Tr. 71-72).  Dr. Cooke disagreed with Dr. Chang's opinion testimony based on the requirement by Social Security to only go "by objective" things that can be demonstrated.  (Tr. 72). Dr. Cooke admitted that fibromyalgia does not produce objective evidence. (Tr. 74). Dr. Cooke further testified that he did not believe Dr. Chang's clinical notes documented the trigger point testing. (Tr. 75).

Dr. Cooke explained his familiarity with the American College of Rheumatology standard for diagnosis of fibromyalgia. Id. Dr. Cooke indicated where the trigger points must be on the body in order for fibromyalgia to occur. Id. Dr. Cooke further testified that if it was possible to attribute the trigger points to another disease, the diagnosis of fibromyalgia would be weakened. Id. Dr. Cooke then went on to discuss experiments conducted by a doctor in Canada that showed individuals who have experienced sleep interference are more prone to have fibromyalgia trigger areas. (Tr. 76). Dr. Cooke further stated that he did consider the fibromyalgia, but did not consider the plaintiff's psychiatric condition when determining whether the plaintiff met a listing. (Tr. 77). Lastly, Dr. Cooke stated, "yes, that –[fibromyalgia] can produce some of the pain she has....it will play a role in it, no question." Id.

## THE ALJ'S DECISION-MAKING PROCESS

"Disability" is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can last for a continuous period of not less

than twelve months . . . ."  42 U.S.C. §§ 416(I); 423(d)(1); 20 C.F.R. § 404.1505 (2005).

The impairment(s) must be severe, making the plaintiff "unable to do his previous work .

. . or any other kind of substantial gainful work which exists in the national economy . . .

."  42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1505-404.1511 (2005).

To determine whether the plaintiff is entitled to disability benefits, the ALJ must

apply a five-step analysis.  20 C.F.R. § 404.1520(a) - (f).  The ALJ must first determine

whether the plaintiff is presently employed or engaging in substantial gainful activity.  If

so, a finding of non-disability is made and the inquiry ends.

Second, the ALJ must determine whether the plaintiff suffers from a severe

impairment or a combination of impairments.  If the plaintiff does not, then a finding of

non-disability is made and the inquiry ends.

Third, the ALJ compares the plaintiff's severe impairments to those in the listings

of impairments located in Appendix I to Subpart 404 of the Code of Federal

Regulations.  20 C.F.R. § 404.1520(d), Subpart P, Appendix I.  Certain impairments are

so severe, whether considered alone or in conjunction with other impairments, that if

such impairments are established, the regulations require a finding of disability without

further inquiry into the plaintiff's ability to perform other work.  See Gibson v. Heckler,

762 F.2d 1516, 1518 n.1 (11th Cir. 1985).  If the impairment meets or equals a listed

impairment, disability is presumed, and benefits are awarded.  20 C.F.R. § 404.1520(d).

Fourth, the ALJ must determine whether the plaintiff has the "residual functional

capacity" to perform his or her past relevant work.  "Residual functional capacity" is

defined as "what you can do despite your limitations."  20 C.F.R § 404.1545(a)(1).  This

determination takes into account "all relevant evidence," including medical evidence,

-12-

the claimant's own testimony, and the observations of others.  20 C.F.R §

404.1545(a)(1).  If the plaintiff is unable to perform his or her past relevant work, then a

prima facie case of disability is established and the burden of proof shifts to the

Commissioner to show at Step 5 that there is other work available in the national

economy which the plaintiff can perform.  20 C.F.R. § 404.1520(e)-(9); see Barnes v.

Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991) (The claimant bears the initial burden of

proving that he is unable to perform previous work.).

Fifth, if the plaintiff cannot perform his or her past relevant work the ALJ must

decide if he or she is capable of performing any other work in the national economy.

## THE ALJ's FINDINGS

On May 22, 2013, the ALJ found that the plaintiff was not disabled under the

relevant sections of the Act. (Tr. 37).

At step one, the ALJ found that the plaintiff was not presently participating in and

had not participated in substantial gainful activity since the amended alleged onset date

of disability.[8] (Tr. 23).  At step two, the ALJ found that the plaintiff did have severe

impairments including discoid lupus, back disorder at L2-L4, L4-L5 and affective mood

disorder. (Tr. 24). Thereafter, the ALJ stated that the plaintiff's alleged fibromyalgia was

not considered severe under Social Security Ruling 12-2p.[9] (Tr. 24, 26). The ALJ also

_____

[8]The Claimant testified that she worked through 2012 as a self-employed bookkeeper.
The ALJ was unable to determine whether claimant's recent work was done at a SGA level
because the income was not reflected in her earning reports. (Tr. 23).

[9]SSR 12-2p "provides guidance on how we develop evidence to establish that a person
has a medically determinable impairment of fibromyalgia, and how we evaluate fibromyalgia in
disability claims and continuing disability reviews under titles II and XVI of the Social Security
Act."

considered the claimant's obesity but did not find obesity to be a significant limitation or cause of any severe impairment. (Tr. 27).

In the ALJ's evaluation of claimant's fibromyalgia, the ALJ considered two sets of criteria for diagnosing fibromyalgia: the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia;  and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria.[10] (Tr. 25).   The ALJ, without specifying which criteria was applied, determined that the claimant's fibromyalgia was not a severe medically determinable impairment under 12-2p. (Tr. 26).  The ALJ found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1525, and 404.1526)." (Tr. 27).

When considering the plaintiff's fibromyalgia claim, the ALJ accorded "less than controlling weight" to the treating rheumatologist, Dr. Chang because his opinion was "inconsistent with his clinical notes and largely based on the claimant's self reports. It [was] also inconsistent with the clinical and diagnostic testing from Dr. Chang and other

---

[10]Under SSR 12-2p, there are two criteria generally utilized to evaluate fibromyalgia claims. Section II(A) sets forth the 1990 Criteria for the Classification of Fibromyalgia, where an adjudicator can find a claimant has a medically determinable impairment of fibromyalgia if they meet the following three requirements: (1) a history of widespread pain in all quadrants of the body on the left and right sides, (2) demonstrate at least 11 positive tender points, and (3) there is evidence that other disorders that could cause similar symptoms or signs were ruled out.

Section II(B) considers the 2010 ACR Preliminary Diagnostic Criteria. Under this criteria, a person who meets all three of the following criteria may have a medically determinable impairment of fibromyalgia. The criteria are: (1) a history of widespread pain (the same as the first factor in the 1990 criteria), (2) repeat showing of six or more Fibromyalgia symptoms or co-occurring conditions, and (3) Evidence that the other disorders that caused the manifestation of symptoms were excluded (similar to the third requirement under the 1990 criteria).

treating sources."

The ALJ next found that the plaintiff did have the RFC to "perform the full range of sedentary work as defined in 20 CFR 404.1567(a)." (Tr. 30). The ALJ further stated that:

> Mentally, she is able to understand, remember and carry out short, simple instructions. She is able to sustain attention/ concentration for 2-hour periods at a time and for 8-hours in a workday on short simple instructions. She can use judgment in making work decisions related to short, simple instructions. She is able to respond appropriately to supervision, co-workers, and ususal work situations. She is able to deal with changes in a routine work setting and interact appropriately with the public. She is able to maintain regular attendance and be punctual within customary tolerances and can perform activities within a schedule.

(Tr. 30). At the same time, the ALJ warned that the plaintiff should avoid sedentary range work that would involve "concentrated exposure to extreme heat and cold; exposure to vibrating surfaces; or moving mechanical parts. She should avoid concentrated exposure to fumes, noxious odors, gases and poor ventilation, as well as humidity and wetness. She is limited to moderate exposure to noise. The claimant should avoid working in direct sunlight." (Tr. 30).

Furthermore, at step four, the ALJ, aided by the Vocational Expert's testimony, found that the plaintiff was unable to perform any past relevant work. (Tr. 36).

Thereafter, the ALJ found that

> there are jobs existing in significant numbers in the national economy that the claimant can perform. Based on a residual functional capacity for the full range of sedentary work, considering claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.21.

(Tr. 37). The ALJ, directed by Medical-Vocational Rule 201.21, concluded the plaintiff was "not disabled" as defined by the Act. (Tr. 37).

## STANDARD OF REVIEW

The Court must determine whether it is appropriate to grant either party's motion for summary judgment. Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C § 405 (g); see Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996) (holding that the reviewing court must not re-weigh evidence or substitute their discretion). On judicial review, decisions made by the defendant (the Commissioner of Social Security) are conclusive if supported by substantial evidence and if the correct legal standard was applied. 42 U.S.C § 405(g) (2006); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. See Miles v. Charter, 84 F.3d 1397, 1400 (11th Cir. 1996). In determining whether substantial evidence exists, "the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

The restrictive standard of review, however, applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. See Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("Commissioner's failure to apply

the correct law or to provide the reviewing court with sufficient reasoning for determining

that the proper legal analysis has been conducted mandates reversal."); accord Martin

v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

The reviewing court must be satisfied that the decision of the Commissioner is

grounded in the proper application of the appropriate legal standards. See Davis v.

Shalala, 985 F.2d 528, 531 (11th Cir. 1993).  The court may not, however, decide facts

anew, re-weigh evidence or substitute its judgment for that of the ALJ, and even if the

evidence weighs against the Commissioner's decision the reviewing court must affirm if

the decision is supported by substantial evidence. See Miles, 84 F.3d at 1400; see also

Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).  Factual evidence is presumed

valid, but the legal standard applied is not. See Martin v. Sullivan, 894 F.2d 1520, 1529

(11th Cir. 1990).  The Commissioner must apply the correct legal standard with

sufficient reasoning to avoid reversal. Id.

## LEGAL ANALYSIS

The plaintiff challenges the ALJ's decision of May 22, 2013, and asserts that the

"Commissioner erred as a matter of law in determining that she is not disabled and

issued a decision which was not based on substantial evidence." See Plaintiff's Motion

for Summary Judgment with Supporting Memorandum of Law (DE#18 at 1,

10/22/2014). The plaintiff has presented four issues: 1) the ALJ did not supply sufficient

reasoning for discounting the treating physician's opinion; 2) the Appeals Council erred

as a matter of law by not remanding the case when supplemental evidence was

submitted; 3) the ALJ did not properly evaluate the plaintiff's subjective complaints; and

4) the Commissioner did not carry her burden at step five of the analysis. Id.  As

explained below, the undersigned finds a remand of this case is appropriate.

The plaintiff argues that the ALJ improperly discounted the treating physician's opinion because the treating physician's testimony affirmed claimant's fibromyalgia and further stated that the claimant had exhibited at least 11 of the 18 trigger points. (Tr. 35). The plaintiff further asserts that the ALJ failed to show good cause for failing to give the treating physician's opinion controlling weight. (Pl.'s Mot. for Sum. J. with Supp. Memo. of Law. DE # 18 at 8, 10/22/2014).

The defendant contends that the ALJ properly considered all of the relevant evidence when assigning the treating physician's opinion less than controlling weight. (Def.'s Mot. for Sum. J. with Sup. Memo. of Law and Resp. to Pl.'s Mot. Sum. J. DE# 22 at 9, 12/19/2014). The defendant notes that there was no documentation ruling out other disorders caused by similar symptoms to fibromyalgia, the physician never specified the location or number of the plaintiff's tender points, and the examining doctor, Dr. Cooke, disagreed with Dr. Chang's opinion. Id. at 9-10.

Because the undersigned finds that a remand was appropriate after submission of the supplemental evidence, the Court need only consider the second issue presented in the plaintiff's motion of whether the AC erred when it did not remand after the submission of substantial evidence. The plaintiff contends that "[t]he Appeals Council erred as a matter of law by refusing to remand this case to the ALJ despite the important new evidence from Dr. Chang". Id. The undersigned finds that whether the AC erred as a matter of law by refusing to remand the case after additional evidence was submitted was an error of law that requires remand of the case to the ALJ for reconsideration. The Court need not address the other three issues raised in the

plaintiff's motion because the undersigned finds that a remand is appropriate, and the determinations at steps three, four, and five addressed by the other issues raised by the plaintiff in her motion, may change after remand.

### The Appeals Council Failed to Consider New Evidence

The plaintiff has an opportunity to present additional evidence at any point during the administrative proceedings. See Ingram v. Comm'r of Soc. Sec. Admin, 496 F.3d 1253, 1261 (11th Cir. 2007). After a judgment has been made by the ALJ and the plaintiff seeks review, "[t]he Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"Id. citing 20 C.F.R. §404.900(b). Under sentence four of section 405(g) the court has the power to review a denial of review made by the Appeals Council. Id. at 1262; see also 42 U.S.C. §405(g).

It is established law that:

> where a claimant properly presents new evidence for consideration by the AC and the AC denies the request for review after considering the new evidence submitted, the "substantial evidence" standard required by sentence four applies, and the Court must determine whether the new evidence demonstrates that the denial of benefits is erroneous because the decision is no longer supported by substantial evidence.[11]

Walden v. Astrue, No. CV 308-020, 2009 WL 2634087, at *4 (S.D. Ga. Aug. 26, 2009); See also Ingram at 1262. Here, the plaintiff properly submitted additional, new evidence to be considered by the AC. (Tr. 1, 5). The additional evidence included a supplemental

---

[11]"Sentence four" refers to sentence four in 42 U.S.C. § 405(g).

brief by Evan A. Zagoria, Esq., dated August 28, 2013, and an office treatment record of Richard Chang, M.D., dated August 18, 2013. (Tr. 4).

## A. The Plaintiff Presented New and Material Evidence

In order for the AC to consider supplemental evidence, the evidence submitted must be "new and material" to the issues considered by the ALJ's decision and relate to the period on or before the ALJ's decision. 20 C.F.R. § 404.976. Evidence is material when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative outcome." Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986) citing Wright v. Heckler, 734 F.2d 696 (11th Cir. 1984). If the AC finds the new evidence submitted to it does not relate to the time period on or before the ALJ administers a decision, the evidence will be returned to the claimant with an explanation as to why it will not be made part of the record. Id. The plaintiff's additional evidence was considered at the time of the AC's consideration of the plaintiff's request for review and made part of the record. (Tr. 1, 5). The AC added, to the record, both the supplemental brief of Evan A. Zagoria, Esq., and the office treatment record of the plaintiff's treating physician, Dr. Chang. (Tr. 5). The AC found the evidence new and material to the plaintiff's case.

The issue now becomes not whether the new evidence was disregarded, but whether the Commissioner's decision is still supported by substantial evidence of the entire record. See Walden at 5. The plaintiff's additional evidence included a supplemental record of her treating physician, Dr. Chang, dated August, 18, 2013. (Tr.

5). The record included statements that were material and relevant to the ALJ's determination of whether the claimant had fibromyalgia. One of the reasons the ALJ provided for making the determination that the plaintiff did not have a medically determinable impairment of fibromyalgia was due to the fact that her tender points were not explicitly listed by her treating physician. (Tr. 24). The Eleventh Circuit has found that there can be a "reasonable possibility that the new evidence would change the administrative outcome because it consists of medical evidence that relates directly to one of [the claimant's] principal alleged impairments, about which there was inadequate evidence presented to the ALJ." Caulder, at 878. The undersigned finds that the subject evidence is new, and material as it is directly related to one of the ailments the plaintiff claimed as a medically determinable impairment at the administrative level for which she is seeking disability.

### B. The Totality of the Evidence Could Reasonably Change the ALJ's Findings

In this case, one of the plaintiff's principle complaints was fibromyalgia. (Tr. 217). The ALJ noted that one of the physician's found the plaintiff had "suspect fibromyalgia" and the treating physician diagnosed the plaintiff with fibromyalgia (Tr. 25). The ALJ also noted that the consultative examiner, Dr. Feldman, found multiple tender points on the plaintiff, but all three failed to locate where they were on the plaintiff's body to satisfy SSR 12-2p. (Tr. 25). The plaintiff contends that the additional evidence from Dr. Chang "goes to the heart of the ALJ's purported concerns and undermines her determination with regards to Ms. Ponton's fibromyalgia." See Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (DE # 18, at 16, 10/21/2014). More specifically, the plaintiff argues the new evidence is significant to

whether fibromyalgia is a medically determinable impairment that should have been evaluated "in terms of its severity and impact on Ms. Ponton's residual functional capacity." Id. at 17.

Fibromyalgia cases often lack medical or laboratory signs. The Eleventh Circuit has recognized that a physician's testimony can be extremely valuable in fibromyalgia cases because fibromyalgia is generally diagnosed based on subjective complaints. See Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). The defendant states that the evidence is not material to the outcome of the case because Dr. Chang's opinion was not supported by the record in the first place. See Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (DE # 22, at 12, 12/19/2014). The defendant relies on the Medical Expert's belief that Dr. Chang's opinion of the plaintiff's fibromyalgia was based on the plaintiff's subjective complaints. Id, at 12. This Court finds the defendant's argument unpersuasive.

When a claimant submits additional evidence that does not provide substantive information of a plaintiff's condition prior to or at the time of the ALJ's decision making, the case does not need to be remanded. See Walden at *5 (finding a plaintiff's supplemental rheumatoid arthritis evidence did not require the Appeals Council to determine if the evidence was contrary to the ALJ's decision when the plaintiff never provided the ALJ with any information or diagnosis at the time of the decision was made). Here, the plaintiff provided supplemental information that was new and relevant to substantiate the plaintiff's original fibromyalgia claim. Dr. Chang's previous diagnosis

of fibromyalgia is found in both his testimony and a note on the record before the ALJ. (Tr. 483, 497). The new evidence should be considered in deciding the existence and severity of the plaintiff's alleged fibromyalgia.

The ALJ has a basic duty to develop a full and fair record and the plaintiff maintains the ultimate burden of proving he/she is disabled through providing evidence. Hamby v. Comm'r of Soc. Sec. Admin., 480 Fed.Appx. 548, 550 (11th Cir. 2012) (quoting Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ stated that there was no definitive documentation that the claimant had the tender points necessary for a finding of fibromyalgia despite Dr. Chang's diagnosis. (Tr. 25-26). The ALJ further noted that Dr. Chang's notes were difficult to read. (Tr. 26). Dr. Chang's "Quick Note" on August 18, 2013, provided for a clarification of the May 2, 2011, progress report to explain where all of the plaintiff's tender points were and also provided supplemental information to his opinion of the plaintiff's residual functioning capacity based on her pain index. (Tr. 505). The supplemental evidence raises a question as to whether the Commissioner's determinations of the plaintiff's fibromyalgia and consideration of the treating physician's opinion is supported by the record in its entirety.

While a doctor's opinion or statement is not determinative of the plaintiff's disability, Dr. Chang's "Quick Note" dated August 18, 2013, offers information regarding one of the plaintiff's main claims for disability and provides an opinion of the plaintiff's residual functioning capacity that should be considered with the totality of the evidence. See, Caulder, at 880 (finding that a physician's statement that a claimant is

-23-

disabled does not determine the issue of disability, but the statement must be considered in the Secretary's examination of all the evidence on record). Dr. Chang's treatment record information alone may not ultimately change the outcome of the plaintiff's case, however, there is a reasonable possibility the evidence could change the administrative analysis and findings concerning the plaintiff's fibromyalgia. Accordingly, this matter warrants remand so that proper consideration of the plaintiff's supplemental evidence may be made.

## CONCLUSION

This Court finds that the supplemental evidence is new and material to the outcome of the plaintiff's case and that the supplemental evidence was not properly considered.  The case should, therefore, be remanded for reconsideration of the totality of the evidence. Remand of the case for reconsideration of new evidence does not require the court to look further into whether substantial evidence of the earlier record, supported the ALJ's finding. Caulder v. Bowen, 791 F.2d 872, 880 (11th Cir. 1986).

## RULING

In accordance with the foregoing, it is

**ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment (DE#21, 12/19/2014) is **DENIED**, that the Plaintiff's Motion for Summary Judgment (DE#18, 10/22/2014) is **GRANTED in part and DENIED in part** in accordance with this Order, and this matter is **REMANDED** for the consideration of the

supplemental evidence provided by the plaintiff.

      DONE AND ORDERED at the United States Courthouse, Miami, Florida this **15th** day of June, 2015.

                              JOHN J. O'SULLIVAN
                              UNITED STATES MAGISTRATE JUDGE

Copies provided to:

ALL COUNSEL OF RECORD